IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:18-CT-3127-FL

|  |  |  |
|---|---|---|
| NATHANIEL R. WEBB, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| DIRECTOR BUTLER and YOLANDA BANKS, | ) | |
| | ) | |
| | ) | |
| Defendants.[1] | ) | |

This matter is before the court on defendants' motion to dismiss for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6), (DE 25).[2]  The issues raised have been fully briefed and in this posture is ripe for ruling.  For the reasons that follow, the court grants in part and denies in part defendants' motion.

## STATEMENT OF THE CASE

Plaintiff, a former pretrial detainee proceeding pro se, commenced this action by filing complaint on May 31, 2018, asserting claims for violations of his civil rights pursuant to 42 U.S.C. § 1983.  Plaintiff alleges defendants Director Butler ("Butler") and Yolanda Banks ("Banks") violated his constitutional rights by copying his mail and providing it to third parties, prohibiting

---

[1]      The court dismissed formerly-named defendant Wake County Jail by separate order entered December 21, 2018.

[2]      Defendants also argue Federal Rules of Civil Procedure 12(b)(2) and 12(b)(7) require dismissal of any state law claims.  As discussed below, the court finds plaintiff has not asserted any state law claims in his complaint. Accordingly, the court does not address plaintiff's arguments for dismissal of plaintiff's state law claims.

plaintiff from having contact with his wife, failing to provide an adequate administrative grievance system, and retaliating against plaintiff for filing grievances. The court conducted its frivolity review of plaintiff's complaint on December 21, 2018, and allowed plaintiff's claims against defendants Butler and Banks to proceed. The court also dismissed plaintiff's claims against the Wake County Detention Center and denied plaintiff's previously-filed motions to appoint counsel and for protective order.

On March 28, 2019, defendants Banks and Butler filed the instant motion to dismiss. Defendants principally argue that plaintiff's complaint fails to state a claim on which relief can be granted, and that they are entitled to qualified immunity. The motion was fully briefed.

## STATEMENT OF THE FACTS

The facts, as alleged in plaintiff's complaint, may be summarized as follows. Beginning on October 31, 2016, plaintiff and his wife were pretrial detainees housed in Wake County detention facilities. (Compl. (DE 1) ¶ V). Plaintiff repeatedly requested permission to "contact" his wife through written correspondence or other form of communication, but defendant Butler refused to permit any contact between the two detainees. (Suppl. Compl. (DE 1-1) ¶¶ 20-22).

Plaintiff also alleges that defendants interfered with his mail. Plaintiff's family members informed plaintiff that correspondence sent to them has been opened, rearranged, and disheveled. (Id. ¶ 1). Defendants also allegedly copied plaintiff's mail and distributed it to third parties, including the state prosecutor responsible for his pending criminal prosecution. (Id. ¶¶ 2-4, 7, 14). Specifically, on June 12, 2017, plaintiff met with his former criminal defense attorney and observed in the attorney's possession approximately 200 to 300 pieces of photocopied correspondence. (Id. ¶ 3). Plaintiff's attorney informed him that detention center staff had

copied the correspondence and provided it to him and the state prosecutor. (Id.). Some of the correspondence included legal information related to plaintiff's pending criminal prosecution, including "case research, defense materials, trial strategy, and other private subjects." (Id. ¶ 4).

On August 24, 2017, plaintiff attended a second meeting with his former criminal defense attorney and again observed photocopies of his private correspondence in his attorney's possession. (Id. ¶ 7). Plaintiff estimates that 100 to 200 additional pieces of photocopied correspondence had been supplied to the attorney. (Id.).

Plaintiff has submitted numerous grievances concerning the mail photocopying and his inability to communicate with his wife. (Id. ¶¶ 6, 8-18, 22, 24-25). The grievances all were rejected or detention officials failed to respond. (Id.).

On January 16, 2018, plaintiff mailed correspondence to defendant Butler's supervisor, alleging defendants were interfering with his mail and spousal communications, and that defendant Butler had failed to maintain an adequate grievance system. (Id. ¶ 26). On February 8, 2018, plaintiff was "rehoused" to a more restrictive housing unit at the Wake County Public Safety Center. (Id. ¶ 27). Plaintiff's new housing unit had only one television set, no access to email, only two telephones, early lockdown on Fridays, and "worse food." (Id. ¶ 28).

## COURT'S DISCUSSION

A. Standard of Review

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level."

3

Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

B.      Analysis

Moving defendants assert the defense of qualified immunity as to plaintiff's claims. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when: 1) the plaintiff has not demonstrated a violation of a constitutional right, or 2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Booker v. S.C. Dep't of Corr., 855 F.3d 533, 538 (4th Cir. 2017).

1.      Mail Claims

The court begins with plaintiff's first claim for relief, that defendants violated his First, Fourth, and Sixth Amendment rights by interfering with his mail. As noted, plaintiff alleges that defendants not only inspected his outgoing mail, but also photocopied it and provided it to the state prosecutor responsible for his criminal prosecution.

Pretrial detainees have a clearly established First Amendment right to send and receive

4

mail, subject to limitations that are reasonably related to legitimate penological interests.[3]
Thornburgh v. Abbott, 490 U.S. 401, 407 (1989); Matherly v. Andrews, 859 F.3d 264, 280-81 (4th Cir. 2017); Rowe v. Shake, 196 F.3d 778, 782 (7th Cir. 1999). Opening and inspecting outgoing non-legal mail is reasonably related to legitimate penological interests because it ensures prison officials can maintain the safety and security of the institution. See Altizer v. Deeds, 191 F.3d 540, 547-48 (4th Cir. 1999); see also United States v. Cook, 457 F. App'x 285, 286 (4th Cir. 2011) (prison officials may conduct warrantless search of outgoing mail if the search is reasonably related to legitimate penological interests).

Plaintiff acknowledges that the inspection of his outgoing mail standing alone is reasonably related to legitimate penological interests. Plaintiff's argument, however, is that the wholesale seizure of his mail (irrespective of its contents) and provision of it to third parties who are not responsible for prison administration violates his constitutional rights. Defendants do not meaningfully address this allegation, and have not attempted to demonstrate their actions are reasonably related to legitimate penological interests. Accordingly, the court finds plaintiff's complaint states a claim for violation of his clearly established First Amendment right to send and receive mail.[4]

Plaintiff also alleges some of the seized mail contained "case research, defense materials,

---

[3]     To the extent defendants are arguing they have not restricted plaintiff's ability to send or receive mail by seizing it and sending it to third parties, the court disagrees. Arbitrary and capricious interference with mail can have a chilling effect on plaintiff's First Amendment right to send and receive mail. See Sallier v. Brooks, 343 F.3d 868, 873–74 (6th Cir. 2003) (prison officials who "arbitrarily and capriciously" read an inmate's mail violate the First Amendment).

[4]     In the event the factual record discloses a legitimate penological justification for interfering with plaintiff's mail, defendants may reassert their qualified immunity defense at a later stage of these proceedings. See Pearson v. Callahan, 555 U.S. 223, 231-32 (2009).

[and] trial strategy" and that the "attorney-client privilege has been violated." (Suppl Compl. (DE 1-1) ¶¶ 4, 30(c)). To the extent plaintiff is alleging that his correspondence with his attorney[5] was read outside his presence and provided to the state prosecutor, the complaint alleges a violation of plaintiff's clearly established First and Sixth Amendment rights. See Altizer, 191 F.3d at 549 n.14 (citing Wolff v. McDonnell, 418 U.S. 539, 575-76 (1974)); see also Nordstrom v. Ryan, 762 F.3d 903, 911 (9th Cir. 2014); Guajardo-Palma v. Martinson, 622 F.3d 801, 803-05 (7th Cir. 2010); Merriweather v. Zamora, 569 F.3d 307, 317 (6th Cir. 2009); Al-Amin v. Smith, 511 F.3d 1317, 1334 (11th Cir. 2008); Jones v. Brown, 461 F.3d 353, 359 (3d Cir. 2006).[6]

Finally, plaintiff alleges defendants violated his Fourth Amendment rights by seizing his mail. As a pretrial detainee, plaintiff does not have a legitimate expectation of privacy in his mail, and thus the Fourth Amendment generally is inapplicable in this context. See Hudson v. Palmer, 468 U.S. 517, 526 (1984). The claim instead is properly analyzed under the First and Sixth Amendments, as set forth above. Accordingly, the court grants the motion to dismiss as to plaintiff's Fourth Amendment claim.

In sum, with respect to plaintiff's first claim related to interference with his mail, the court grants in part and denies in part the instant motion to dismiss. The court dismisses plaintiff's

---

[5]     As defendants note, plaintiff does not clearly allege that he properly labeled the correspondence legal mail or that it was sent to his attorney. In light of plaintiff's pro se status, the court will not dismiss the claim on this basis. In the event plaintiff did not properly label his correspondence "legal mail," he may be precluded from arguing that his mail should receive heightened constitutional protections. See United States v. Stotts, 925 F.2d 83, 86-88 (4th Cir. 1991) (upholding Federal Bureau of Prisons regulations requiring legal mail be appropriately labeled to receive special treatment); Merriweather v. Zamora, 569 F.3d 307, 317 (6th Cir. 2009) (noting only "properly marked" legal mail is subject to heightened protections).

[6]     As defendants note, plaintiff has not alleged a claim for denial of access to the court because he has not alleged that defendants' actions hindered his efforts to pursue a nonfrivolous legal claim. See Christopher v. Harbury, 536 U.S. 403, 414-16 (2002). Plaintiff's First Amendment claim, to the extent it is predicated on defendants reading his legal mail and distributing it to third parties, is distinct from any access to the courts claim. See Al-Amin, 511 F.3d at 1333-34.

6

Fourth Amendment claim related to seizure of his mail, but denies the motion as to plaintiff's First and Sixth Amendment claims alleging interference with his mail.

2.    Marital Communications

Plaintiff also alleges defendants violated his constitutional rights by denying his requests to communicate with his wife, who is also an inmate at the Wake County Detention Center.   The Due Process Clause of the Fourteenth Amendment protects plaintiff's marital relationship, including during his incarceration.   See Obergefell v. Hodges, 135 S. Ct. 2584, 2599-600 (2015) (discussing contours of the constitutional right to marriage); Turner v. Safley, 482 U.S. 78, 95-96 (1987) (explaining Due Process Clause provides for a "constitutionally protected marital relationship in the prison context").   However, a prison regulation or administrative decision impinging on inmates' constitutional rights can be upheld if it is reasonably related to a legitimate penological interests.   Turner, 482 U.S. at 89, 96-99; Jehovah v. Clarke, 798 F.3d 169, 176 (4th Cir. 2015); see also Nigl v. Litscher, 940 F.3d 329, 333 (7th Cir. 2019) (applying Turner test to prison administration ruling barring plaintiff from marrying former prison employee).

Defendants do not attempt to justify their ban on plaintiff communicating with his wife under Turner's reasonable relationship test.   Instead, they argue the prohibition on marital communications between plaintiff and his wife is valid because plaintiff's wife also is a pretrial detainee, and Turner purportedly "held that a complete ban on inmate-to-inmate correspondence was constitutional."   (Mem. (DE 26) at 7).

The court disagrees that Turner embraces a blanket ban on all inmate-to-inmate communications.   The regulation at issue in Turner generally prohibited inmate-to-inmate correspondence, but made exceptions for immediate family members, such as plaintiff and his

7

wife. See Turner, 482 U.S. at 81. And more importantly, the regulation was upheld only after the Court engaged in an extensive analysis of how the particular regulation was reasonably related to legitimate penological interests within the Missouri prison system, using the four-factor test set forth in Turner. See id. at 89-93. Defendants have not yet attempted to show that their policy prohibiting all communication between plaintiff and his wife is reasonably related to legitimate penological interests. In the absence of such analysis or other argument in support of dismissal of the marital communications claim,[7] the court denies the instant motion to dismiss as to this claim.

3.    Grievance Claim

Plaintiff alleges his Fourteenth Amendment due process rights were violated when defendants failed to properly respond to his grievances or permit administrative appeals of adverse responses. Plaintiff has "no constitutional entitlement or due process interest in access to a grievance procedure." Booker, 855 F.3d at 541. Plaintiff therefore "cannot bring a § 1983 claim alleging denial of a specific grievance process." Id.; see also Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Accordingly, the court grants defendants' motion to dismiss as to plaintiff's grievance claims.

4.    Retaliation Claim

Plaintiff also alleges defendants violated his First Amendment rights by retaliating against him for filing grievances. Plaintiff alleges he was transferred to a more restrictive facility in

---

[7]    Defendants suggest in passing that the right asserted by plaintiff was not clearly established at the time defendants prohibited communications between plaintiff and his wife. But Turner established, in 1987, that prison officials cannot infringe on an inmate's marital rights unless the regulation is reasonably related to a legitimate penological interest. 482 U.S. at 94-100.

retaliation for filing grievances. These allegations arguably allege a viable claim for relief. See Booker, 855 F.3d at 546 (holding that inmates have had a clearly established right under the First Amendment to be free from retaliation for filing grievances since at least 2012).

Defendants do not argue these allegations fail to state a claim for relief. Instead, defendants decline to address the claim because the court purportedly "dismissed" the claim in its December 21, 2018, order. Contrary to this assertion, the court's order did not dismiss any of plaintiff's claims. (See DE 10 at 3 (allowing plaintiff's "claims" against the individually-named defendants to proceed)). Accordingly, plaintiff's retaliation claim may proceed.

5. State Law Claims

Finally, defendants argue that plaintiff's state law claims should be dismissed. The court, however, does not discern any state law claims in plaintiff's complaint. Plaintiff's response to the instant motion to dismiss appears to confirm that he is not raising state law claims in this action. (See DE 28 at 18 (characterizing the instant action as a "§ 1983 suit"); see also id. at 19). Accordingly, the only remaining active claims in this action are plaintiff's First and Sixth Amendment claims alleging interference with his mail, Fourteenth Amendment claim alleging interference with his marital relationship, and First Amendment retaliation claim.

## CONCLUSION

Based on the foregoing, the court GRANTS IN PART and DENIES IN PART defendants' motion to dismiss, (DE 25). The court GRANTS the motion with respect to plaintiff's Fourth Amendment claim and plaintiff's claim that defendants violated his constitutional rights by providing an inadequate grievance system. Such claims are dismissed with prejudice for failure to state a claim. The court DENIES the motion as to the remaining federal constitutional claims

set forth above.   An initial order will follow.

SO ORDERED, this the 23rd day of March, 2020.

_____
LOUISE W. FLANAGAN
United States District Judge